# Wau-kon-chaw-neek-kaw, et al., plaintiffs in error, *vs.* The United States, defendant in error.

### *Error to Dubuque.*

An omission of the Clerk in certifying a record, upon a change of venue, to state the name of the judge, that the jury were lawfully sworn, interrogated, &c., at the time the indictment was found, cannot be assigned for error.

The indorsement on an indictment of the words " a true bill," with the foreman's name, is merely directory, and if there are other proofs in the record, that the grand jury duly returned the bill, it is sufficient.

After a defendant has so far admited the sufficiency of the indictment, as to consent to go to trial, especially after the unanimous verdict of a petit jury, it is too late to question the regularity of the proceedings by which he was put upon trial.

It is not necessary that the grand jurors should be sworn to enquire of offences committed in an unorganized county. For judicial purposes it bears the name of the county to which it is attached.

An opinion formed from rumor, is sufficient to exclude a juror; but it must be an opinion, as to the guilt or innocence of the prisoner then on trial.

The law will not permit a witness to be interrogated upon a collatteral matter, merely for the purpose of afterwards contradicting such immaterial statements.

GRANT, for plaintiffs in error :

This was an indictment against Wau-kon-chaw-neek-kaw and two other Indians, for the murder of Moses Tegarden, tried at the August term of the Dubuque District Court.

The first error on which the plaintiffs in error rely, is that it does not appear from the record that the grand jury, who found this indictment, were lawfully sworn.

The indictment in this case was presented and found, at the Clayton District Court. The record transmitted to the Dubuque, reads thus: "District Court for Clayton county, Iowa territory, April term, 1843. The grand jury returned into court the following as true bills," &c.

It requires no argument to prove that the record must shew that the grand jury were sworn. It is one of those plain propositions which strikes every lawyer's mind as unqualifiedly true. See in point, 1 Saund. Rep. 249.

2. The record does not show that the grand jurors were sworn and interrogated as to their qualifications.

3. The record does not show any, or who was the judge of the Clayton District Court, when this indictment was found.

4. The record does not show that the indictment was endorsed by the foreman, as a true bill. See, precisely in point, 5 Greenleaf, 432.

5. The record does not shew that the grand jurors were sworn to enquire of offences in Fayette county, (attached to Clayton.)

6. The court erred in overruling the challenge of the prisoner to divers jurors and particular to one Anderson.

[The last exceptions are sufficiently recited in the opinion of the court.] Further citations by Mr. Grant: People vs. Mather, 4 Wend. 229, 241 ; 6 Cowen, 555 ; 7 Cowen, 108 ; 1 Burr's Trial, 370, 419 ; 1 John. Rep. 316 ; 1 Cowen, 432.

7. The court erred in permiting Wilson and Beatty to testify, as to the injuries committed on Isaac and Maria Tegarden.

8. The court erred in refusing to permit L. B. Lowry to testify that Isaac Tegarden heard a conversation in relation to the title of a certain gun, and that afterwards he swore for the first time that the gun was sold to his father.

CRAWFORD, for defendant:

The first and second errors assigned, may be considered together.— To either advantage might have been taken by a plea in abatement, but the judgment cannot be affected for those causes. See statute. p. 157. The statute requiring the grand jurors to be sworn is merely directory, and the court will be presumed to have done its duty until the contrary appears. As to directory statutes, see Cole vs. Perry, 6 Cowen, 584.

There is no error in the matter thirdly assigned. The law declares which judge shall hold the court in Clayton and this court will take notice of it. Again, if the court was not holden by the proper judge, or if it does not so appear, this would have been a proper matter for a plea in abatement.

The record does show that the indictment was returned into court as a *true bill.* It could not have been returned a true bill unless the foreman made the proper endorsement. This again was a proper matter for a plea in abatement, 1 Chit. Cr. Law, 438, 445.

The statute of Wisconsin does not attach Fayette county to Clayton. It makes it a part of Clayton for all purposes.

Anderson, the juror, answered that he had formed no opinion as to the guilt of the prisoner. I apprehend that the guilt or innocence of the prisoner is the question, and the only question to be tried by the jurors. And Anderson shows himself by his answers wholly impartial. See 8 John. 445; 4 Wend. 229; 6 Wend. 603.

The sixth and seventh assignments are not applicable to the case under consideration.

As to the eighth, Lowry was called to impeach the witness, Moses Tegarden, by contradicting him in the answer to a question on cross-examination, which interrogatory was as to irrelevant matter. If a party on a cross-examination of a witness put impeaching questions, as to irrelevant matters, the party is bound by the answer of the witness, and cannot call witnesses to contradict him, 1 Starkie, 181.

PER CURIAM, MASON, CHIEF JUSTICE.—The three first errors assigned in this case can all be disposed of at once. In substance they are, 1. That the record does not show that the jury were lawfully sworn. 2. That it does not show that they were sworn and interrogated as to their qualifications. 3. That it does not show who was the presiding judge at the time the indictment was found.

The clerk of the District Court of Clayton county, in transmitting a copy of the record to Dubuque county, (upon change of venue) failed to prefix a caption to the transcript. He has only copied the record of those proceedings which are peculiar to this case, omitting to set forth those which would show the term of the court to have been legal, or the grand jury to have been regularly empannelled and sworn.

The English practice is to state those proceedings whereever a case is transferred to another court by writ of error or otherwise, but that practice has never been followed in this territory. The clerks of the District Courts in certifying up their transcripts, generally insert in a brief caption the name of the presiding judge of their court, but it is doubtful whether a case can be found on the files of this court, where the names of the grand jury; the nature of their oath and other forms in analogy to the English practice, will be found to have been inserted.

Is it expedient to change our course of proceeding in this particular? We think not. It would be augmenting the bulk of our transcripts unnecessarily. A more convenient, and just as safe a rule is, that which has been always observed here; that in these respects the proceedings below will be presumed to have been correct, unless the contrary is shown by the plaintiff in error. This leaves the plaintiff in error, full power to take advantage of any defect which he can show to exist in the proceedings, and if by possibility any mere irregularity should pass unnoticed and uncorrected, a defendant can hardly be thereby prejudiced, who afterwards has a full trial on the merits by a competent and impartial jury. It would be subversive of justice to allow a party to remain silent in relation to matters of this nature, until after a final hearing, and then to obtain a re-hearing of the case and put the public to the trouble and expense of a new trial, merely because a clerk of the District Court omitted a caption to his transcript. Even the English courts would not have done this, especially at the first term. See Faulkner's case, 1 Saund. R., 249.

The omission of the caption in this case is not, it is true, by the clerk of the court of Dubuque county, but of Clayton county, in certifying the transcript an change of venue, but that circumstance does not seem as though it should change the course of reasoning or the decision of this court.

The fourth error assigned is that "the record does not show that the indictment was endorsed by the foreman as a true bill." The record states that the grand jury returned this bill into court (among others) as a true bill, but the endorsement required by the statute is entirely wanting, so far as appears from the transcript. Under these circumstances should the omission be deemed a fatal defect? The law requiring the words "a true bill," with the foreman's name subscribed thereto to be endorsed upon a bill of indictment, is merely directory. This is doubtless intended as the appropriate evidence of the same having been regularly found. But where there is other proof that the grand jury duly returned the bill into court as "a true bill," we think that furnishes sufficient prima facia evidence of regularity in this respect to prevent an omission of the required endorsement from becoming a fatal defect at this stage of the proceedings.

In fact there is a consideration connected with this idea, which applies to this as well as to many other of the objections raised in this case. The object of a bill of indictment is merely to put the party accused upon his trial. Our law watches over the rights of the citizen with so

much care that it will not even allow him to be put to the trouble, vexation and expense incident to a defence in court, until a majority of twenty-three good and lawful men, upon their oathes have declared him guilty. If there be error or irregularity in the finding of the indictment, he ought not to be made to enter upon his defence.

But after the proper time has passed for making this objection; after he has so far admitted the sufficiency of the indictment as to consent to go to trial; especially after the unanimous verdict of a petit jury pronouncing him guilty, it would seem rather late to question the regularity of the proceedings by which he was put upon his trial. The result furnishes strong evidence that he ought to have been tried.

Where there has been a substantial error in such proceedings, it would doubtless be in accordance with established authorities to reverse the case on that account. We should not have felt justified in deviating from such a rule. But where there is a mere irregularity in the form of the proceedings; a simple deviation from some directory rule, the reasoning above stated seems to us so just and forcible that we should not feel disposed to be governed even by stronger authority than the only one cited on this point by the counsel for the plaintiffs in error (5 Greenleaf, 432.)

The next error assigned is, that the record does not show that the grand jury were sworn to enquire of offences in Fayette county. The reasons against the previous objections apply also to this, but in addition thereto, we think it was unnecessary the grand jury should have been thus sworn. The law on this subject, after setting off a tract of country to be called Fayette, declares that it shall " for temporary purposes be attached to and *in all respects* be considered a part of the county of Clayton." Acts of Wisconsin, 1837-8, pages 11, 12. There was no more need of having the grand jury specially sworn to enquire into offences committed in Fayette, than in any other district or township in Clayton county.

The sixth error assigned is, that the court erred in overruling the challenge of the prisoner to divers jurors, and particularly to one Anderson. It appears from the bill of exceptions that Anderson, when called on as a juror, stated as follows:

" I cannot say that I have formed or expressed an opinion as to the guilt or innocence of the prisoner at the bar, I believe I have not as to him. I heard the reports that Tegarden and family were killed by Indians, and I believed that report. Who those Indians were that did it I cannot say. I still believe that Tegarden and family were killed by

Indians and I should go into the jury box with that belief on me, to be removed by evidence. I formed no opinion as to whether the killing was murder; I thought and still think it was a crime. I took no interest in the matter; have no bias or prejudice against the prisoner, I did not think about the killing being in self defence, I do not think I have any ground to form an opinion on that subject. If it should be in self defence I should not think it a crime."

The burden of this statement appears to be that the juror had heard reports that the family had been killed by Indians, and that he believed such report. It has been made a question whether any opinion formed from rumor is sufficient to exclude a juror, but we think the weight of reason and authority is clearly in favor of such exclusion where an opinion has been formed or expressed as to the guilt or innocence of the person immediately accused. But such was far from being the case in the present instance. The juror stated that he had no bias or prejudice against the prisoner, but merely gave credit to the reports that some Indians had done the deed, and he believed that the act was a crime unless done in self defence. We do not think this case can be brought within the range of the authorities cited by the counsel for the plaintiff in error, which are all founded upon the basis that the juror had formed an opinion as to the guilt or innocence of the prisoner then on trial. We think it would be going too great lengths, to extend the rule inflexibly to a case like the present. A good deal of discretion should be left with the District Court, for all the circumstances of the case can never be fully presented here. Although therefore, we would not have deemed it error in that court to have rejected this juror for the cause above set forth, we feel equally satisfied that a new trial ought not to be granted on account of the refusal to reject.

The error set forth in the seventh assignment of errors, is not available here, at all events as the decision of the court there excepted to, does not seem to have occurred on the trial of either of the present plaintiffs in error.

The last error assigned is that the court erred in refusing to permit L. B. Lowry to testify that Isaac Tegarden heard a conversation in relation to a certain gun, and that afterwards he swore for the first time that the gun was sold to his father. This evidence was offered for the purpose of impeaching the testimony of young Tegarden. The whole evidence in relation to the gun was collateral and not material to the issue, and the law does not permit a witness to be interrogated upon a collateral matter, merely for the purpose of afterwards contradicting his

43

statements thereupon.　See 1 Starkie on Evidence, 181-2 ; 2 Starkie, 222-3.　There was no error therefore, in the ruling of the court upon this point.　Judgment affirmed.